UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA P. RAMIREZ-MARTINEZ, <br><br> Plaintiff, <br><br> v. <br><br> NISSAN NORTH AMERICA, INC., <br><br> Defendant. | Case No. 2:25-cv-04744-MAR <br><br> ORDER GRANTING MOTION TO REMAND, DKT. 14 |

## I.

## **SUMMARY OF ORDER**

Plaintiff Martha P. Ramirez-Martinez ("Plaintiff") filed the instant action in Los Angeles County Superior Court on June 20, 2024.  ECF Docket No. ("Dkt.") 1-1.  Defendant removed the matter to this Court nearly one year later, on May 27, 2025.  Plaintiff now moves to remand to state court, arguing that Defendant's removal was untimely.  Dkt. 14.  For the reasons stated below, the motion is **GRANTED**.

## II.

## **BACKGROUND**

On June 20, 2024, Plaintiff filed a complaint in Los Angeles County Superior Court alleging violations of California's Song-Beverly Consumer Warranty Act, California Civil Code Sections 1790-1795.8.  Complaint ("Compl."), Dkt. 1-1 at 3.  Plaintiff alleged that she purchased a 2020 Nissan Versa that was covered by

1  Defendant's vehicle warranty.  Id. ¶ 5.  Plaintiff further alleged that the car developed
2  at least six different defects, and that Defendant was unable or failed to repair the
3  defects within a reasonable number of attempts.  Id. ¶¶ 11–12.  The Complaint did
4  not state the amount Plaintiff paid for the car, but did allege that "[t]he total amount
5  paid and payable, incidental and consequential damages and civil penalties exceeds
6  $35,000."  Id. ¶ 6.  In the prayer for relief, the Complaint sought actual damages,
7  restitution, "a civil penalty in the amount of two times Plaintiff's actual damages,"
8  consequential and incidental damages, attorneys' fees, and prejudgment interest.  Id. at
9  9.

10        The case proceeded in state court.  On September 20, 2024, pursuant to a state
11  court discovery order, Plaintiff produced several documents to Defendant, including
12  the vehicle Retail Installment Sale Contract ("RISC"), several repair orders, and
13  Plaintiff's California vehicle registration.  Dkt. 14-1, Declaration of Lara F. Rogers at ¶
14  11, Ex. 5.  The RISC, Plaintiff's registration, and several of the repair orders also
15  included Plaintiff's California address.  Id.  Each repair order also indicated how many
16  miles were on Plaintiff's vehicle each time she brought the vehicle in for repairs.  Id.
17  at 136–-147.

18        The case continued in state court, during which time the court held multiple
19  status and case management conferences.  Dkt. 1-3.  On April 11, 2025, the state
20  court issued a trial preparation order.  Id.  Soon after, however, on May 27, 2025,
21  Defendant removed the matter to this Court, asserting that "[i]n the last 30 days,
22  Nissan . . . conducted a preliminary investigation and determined that Plaintiff's
23  citizenship and the reasonable, non-speculative estimation of the amount in
24  controversy placed at issue through Plaintiff's allegations plausibly give rise to subject
25  matter jurisdiction."  Dkt. 1 ("Notice of Removal") at 2.

26        Plaintiff now moves to remand to state court.
27  ///
28

2

## III.

## **LEGAL STANDARD**

District courts have original diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a). A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court. See 28 U.S.C. § 1441(a). The case must, however, be remanded to state court if, at any time before final judgment, it appears that the federal court lacks subject matter jurisdiction. See 28 U.S.C. § 1447(c); Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87 (1991). Federal courts "strictly construe the removal statute against removal jurisdiction," such that any doubt as to the propriety of removal is resolved in favor of remanding the case to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). A removing defendant bears the burden of proving federal jurisdiction. See Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008); Gaus, 980 F.2d at 566.

## IV.

## **DISCUSSION**

In general, a defendant seeking to remove a state case to federal court must file a notice of removal within thirty days of receiving the state court complaint. 28 U.S.C. § 1446(b)(1). 28 U.S.C. § 1446(b)(1) ("The notice of removal . . . shall be filed within 30 days after the receipt . . . of the initial pleading."). But where the allegations of an initial complaint are not sufficient to establish removability, the statute provides a "second pathway to removal" upon later "receipt by the defendant . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Dietrich v. Boeing Co., 14 F.4th 1089, 1090 (9th Cir. 2021); 28 U.S.C. § 1446(b)(3). In such

3

1  instances, the defendant must file a notice of removal within thirty days of receipt of
2  any such document establishing removability.  28 U.S.C. § 1446(b)(3).[1]  Although this
3  time limit is not jurisdictional, it "is mandatory[,] and a timely objection to a late
4  petition will defeat removal."  Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212
5  (9th Cir. 1980)

6       Here, there is no dispute that Defendant did not file a notice of removal until
7  nearly a year after receipt of the initial pleading, far too late to avail itself of the "first
8  pathway to removal" pursuant to 18 U.S.C. § 1446(b)(1).  Dietrich, 14 F.4th at 1090.
9  The question, however, "is at what point the removal clock began to run on the
10  second pathway.  That is, at what point could [removability] *first be ascertained* from an
11  amended pleading, motion, order, or other paper?"  Id. at 1093 (emphasis original).

12       Defendant contends that the second pathway clock was never triggered, as
13  Defendant never received any "singular" pleading or other paper from which
14  removability could be ascertained.  As an initial matter, Defendant's unsupported
15  assertion that removability must be apparent from a "singular paper triggering the 30-
16  day window for removal" is not well-taken.  Opposition at 1:8.  Defendant does not
17  cite to, nor is the Court aware of, any authority for the proposition that all the
18  information necessary to establish removability (here, the amount in controversy and
19  the citizenship of the plaintiff) must be contained within a single document.  By

---

[1] "Beyond those two deadlines, a defendant *may* remove a case where it could have demonstrated removability earlier based on its knowledge beyond the pleadings."  Gomez v. Nissan N. Am., Inc., No. 2:24-CV-09020-SVW, 2025 WL 26368, at *2 (C.D. Cal. Jan. 3, 2025) (quoting Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013) (internal quotation marks omitted); see also Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1123 (9th Cir. 2013) ("[T]hese two periods do not otherwise affect the time during which a defendant *may* remove.") (emphasis original).

1  Defendant's logic, if a plaintiff's initial complaint established the complete diversity of
2  the parties, but was silent as to the amount in controversy, and a subsequent
3  document later clarified that the amount in controversy unequivocally exceeded the
4  jurisdictional threshold, but was itself silent as to the plaintiff's citizenship, the thirty-
5  day clock under 18 U.S.C. § 1446(b)(3) would not be triggered, leaving a defendant
6  free to remove the case to federal court at any later time of defendant's choosing.
7  Such a result would fly in the face of fairness, common sense, and judicial economy,
8  let alone the strict construction of Section 1446 against removal jurisdiction.  The
9  Court therefore proceeds to examine whether Defendant filed its notice of removal
10 within thirty days of receipt of any paper that, cumulatively with any prior-received
11 pleading or other document, made removability "unequivocally clear and certain."
12 See Dietrich, 14 F.4th at 1093-94; see also, e.g., Keys v. Sam's W., Inc., No.
13 222CV00071JCMBNW, 2022 WL 5264898, at *2 (D. Nev. May 31, 2022) (post-
14 complaint settlement demand sufficient to establish amount in controversy and trigger
15 30-day clock).

16 **A.     COMPLETE DIVERSITY OF THE PARTIES**

17       For this Court's diversity jurisdiction to have been sufficiently apparent, it must
18 have been clear that (1) Plaintiff's citizenship differed from that of Defendant, a
19 Delaware corporation with its principal place of business in Tennessee, and (2) the
20 amount in controversy exceeded $75,000.  28 U.S.C. § 1332(a).  State citizenship is
21 dependent on a person's "state of domicile, not her state of residence."  Kanter v.
22 Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person's domicile is her
23 permanent home, where she resides with the intention to remain or to which she
24 intends to return."  Id.  However, "[a]t minimum, a person's residence constitutes
25 *som*e evidence of domicile."  Adams v. W. Marine Prod., Inc., 958 F.3d 1216, 1221
26 (emphasis original).  Thus, "[w]hile residency is distinct from domicile, the Supreme
27 Court and numerous other courts have treated a person's residence as prima facie
28

5

1  evidence of his domicile." Mpock v. FCA US LLC, No. 121CV00330NONESAB,
2  2021 WL 5356472, at *5 (E.D. Cal. Nov. 17, 2021).  Indeed, some courts have gone
3  so far as to conclude that, "[f]or purposes of removal based on diversity of
4  citizenship, a plaintiff's state of residence is presumptively considered to be their state
5  of citizenship." Covarrubias v. Ford Motor Co., No. 2:25-CV-00328-JLS-MAA, 2025
6  WL 907544, at *3 (C.D. Cal. Mar. 24, 2025) (citing Bradley Min. Co. v. Boice, 194
7  F.2d 80, 84 (9th Cir. 1951) and Adams, 958 F.3d at 1221) ("A party . . . may rely on
8  the presumption of continuing domicile, which provides that once established, a
9  person's state of domicile continues unless rebutted.") (quoting Mondragon v. Cap.
10 One Auto Fin., 736 F.3d 880, 885 (9th Cir. 2013); but see Margayan v. Nissan N. Am.,
11 Inc., No. CV 25-5653 PA (MBKX), 2025 WL 1819741, at *2 (C.D. Cal. July 1, 2025)
12 (declining to apply presumption); Chavarin v. Gen. Motors LLC, No. 2:25-CV-06852-
13 HDV-MBK, 2025 WL 3030875, at *3 (C.D. Cal. Oct. 29, 2025) (same).  Applying
14 similar logic, courts have looked to RISCs and state drivers' licenses as sufficient
15 evidence of state citizenship. See, e.g., Canesco v. Ford Motor Co., 570 F. Supp. 3d
16 872, 886 (S.D. Cal. 2021); Alonso v. Mercedes-Benz USA LLC, No. 2:25-CV-00934
17 MWC (AGRX), 2025 WL 980146, at *2 (C.D. Cal. Mar. 31, 2025).

18        Here, the Complaint alleged that Plaintiff is a resident of California.  Compl. ¶
19 2.  Moreover, it is undisputed that Plaintiff served the vehicle RISC, her current
20 registration, and numerous repair orders on Defendant on September 20, 2024, and
21 that several of these documents included Plaintiff's California address.  Opposition at
22 9; Dkt. 14-1, Rogers Decl. at ¶ 11, Ex. 5.  Thus, when considered in conjunction with
23 the Complaint's allegation of Plaintiff's California residency, which served as at least
24 "some evidence" of her California citizenship, the additional information in the RISC,
25 repair orders, and registration was sufficient to make clear that Plaintiff was indeed a
26 citizen of California.  Defendant, therefore, could have ascertained no later than
27 September 20, 2024 that Plaintiff's citizenship was and is diverse from Defendant's.
28

### B. AMOUNT IN CONTROVERSY

Even if the parties' diversity of citizenship was clear well before Defendant filed the Notice of Removal on May 27, 2025, the question remains whether the amount in controversy was similarly ascertainable more than 30 days prior to Defendant's removal. Plaintiff's Complaint sought, among other things, actual damages, civil penalties, attorney's fees, and prejudgment interest. Compl. at 9. "Actual damages under the Song-Beverly Act are equal to the actual price paid or payable by the buyer, minus the reduction in value directly attributable to use by the buyer." Lukas v. Gen. Motors, LLC., No. 2:25-CV-08305-WLH-MAA, 2025 WL 3456648, at *5 (C.D. Cal. Dec. 1, 2025) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)–(C) (internal quotation marks omitted). A plaintiff who shows a willful violation of the Song-Beverly Act may recover a civil penalty of up to two times the amount of actual damages. Cal. Civ. Code § 1794(c). A prevailing plaintiff is also entitled to attorney's fees. Cal. Civ. Code § 1794(d).

The RISC indicates a total sale price for the vehicle of $40,675.76. Rogers Decl. at 128. As stated above, Plaintiff also produced several repair orders, the latest of which appears to be an August 12, 2024 invoice indicating that the vehicle had 35,979 miles on it when brought in for service. Rogers Decl., Ex. 5 at 148. Mileage bears on actual damages insofar as it translates to a reduction in a vehicle's value attributable to a "buyer prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the [warranty dispute]." Cal. Civ. Code § 1793.2(d)(2)(C). By statute, that reduction in value is calculated "by multiplying the actual price of the new motor vehicle . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled."[2] Id. Thus, the

---

[2] "The Ninth Circuit has held that § 1446(b)(1) requires a defendant to apply a reasonable amount of intelligence in ascertaining removability[,] and that multiplying figures . . . is an aspect of that duty." Perry v. Ford Motor Co., No. 2:24-CV-03197-

7

1  higher the mileage, the higher the reduction in value, and the lower a plaintiff's actual
2  damages. Here, even assuming that the last, August 12, 2024 repair attempt was the
3  first delivery of the vehicle for repairs, the 35,979-mile figure yields a reduction in
4  value of $12,195.61, and a resulting actual damages figure of 28,480.15.[3]

5    Those damages alone do not cross the jurisdictional threshold. Plaintiff's
6  Complaint, however, also sought civil penalties of up to two times Plaintiff's actual
7  damages. "The Ninth Circuit routinely considers civil penalties when deciding
8  whether the amount-in-controversy requirement has been satisfied, including in Song-
9  Beverly cases." Wang v. FCA US LLC, No. 8:24-CV-02060-JWH-KES, 2025 WL
10 1218745, at *2 (C.D. Cal. Apr. 28, 2025) (collecting cases). Defendant nevertheless
11 appears to suggest that civil penalties should not be considered here because, without
12 a reasonable estimation of actual damages, "civil penalties are speculative." Opp. at
13 12:26. Defendant appears to contend that because the Complaint is ambiguous as to
14 actual damages, it follows that "the Complaint is indeterminate as to civil penalties."
15 Opp. at 14:15. Defendant's blinkered focus on the Complaint alone, however,
16 reflects a misplaced reliance on "first pathway" cases concerning removability on the
17 basis of an initial pleading, without reference to any subsequent "other paper," and a
18 seemingly willful blindness to information contained in the RISC and the repair

---

WLH-MAR, 2024 WL 3879142, at *3 (C.D. Cal. Aug. 20, 2024) (quoting Kuxhausen, 707 F.3d at 1140) (internal quotation marks omitted).

[3] 40,675.76 x (35,979/120,000) = 12,195.61. The purchase price of $40,675.76 minus a reduction in value of $12,195.61 equals an actual damages value of $28,480.15. Although Plaintiff's Reply makes reference to a 51,990 mile figure as well, the source of that number is unclear. Reply at 5:7. Morever, although Plaintiff contends that even that higher mileage number would yield a repurchase value of at least $27,957.95, it is unclear how Plaintiff arrives at that figure. Neither Plaintiff's motion nor her Reply list a purchase price. Continuing to draw, therefore, from the RISC, 40,675.76 x (51,990/120,000) = 17,622.77. A reduction of the $40,675.76 purchase price by $17,622.77 would yield $23,052.99, not $27,957.95. And although Defendant suggests that additional offsets may apply (Opp. at 15:15), neither party provides any specific figure or source for any such potential offset. See Larios v. Nissan N. Am., Inc., No. 2:25-CV-05095-AJR, 2025 WL 2402250, at *5 (C.D. Cal. Aug. 16, 2025) (discussing additional offsets for negative equity, rebates, service contracts, or GAP financing).

8

1  orders.  See, e.g., Crescencio v. Ford Motor Co., No. CV 24-10946-MWF (BFMX),
2  2025 WL 1122096, at *1 (C.D. Cal. Apr. 9, 2025) (analyzing whether complaint alone
3  established removability); Opp. at 15:9–12 ("[B]ecause the Complaint is indeterminate
4  as to each component of Plaintiff's alleged damages, . . . service of the Complaint did
5  not trigger Nissan's duty to remove within 30 days.") (emphases added).  As discussed
6  above, however, the RISC and the repair orders provide sufficient basis to conduct an
7  actual damages calculation.  Whether the Complaint does so, therefore, is of no
8  moment.  Given the estimate of actual damages made possible by the RISC and the
9  repair orders, the civil penalty Plaintiff seeks should also be considered in calculating
10 the amount in controversy.  Taking that penalty into account yields a figure of
11 $85,440.45, an amount sufficient to establish the requisite amount in controversy and
12 trigger removability.

## V.
## CONCLUSION AND ORDER

Even putting aside Plaintiff's prayer for attorney's fees and prejudgment interest, it was unequivocally certain as of September 20, 2024 that this case was removable to federal court.  Defendant's May 27, 2025 removal was therefore far outside the 30-day window set forth by 28 U.S.C. § 1446(b)(3).  Because Defendant's removal was untimely, Plaintiff's Motion to Remand is **GRANTED.**

**IT IS THEREFORE ORDERED**:

This action is **REMANDED** to Los Angeles County Superior Court.

Dated:  December 16, 2025

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

9